IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 21, 2017

## TYLER JAMES SCHAEFFER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Sevier County**
No. 17872-III        Rex H. Ogle, Judge

_____

### No. E2016-01614-CCA-R3-PC

_____

This case should serve as a cautionary tale for any prosecutor, defense attorney, or trial court who attempts to negotiate or accept a guilty plea involving concurrent state and federal sentencing. Petitioner, Tyler James Schaeffer, pled guilty to two counts of vehicular homicide, two counts of aggravated assault, nine counts of vehicular assault, and one count of possession of a controlled substance analogue. He received an effective sentence of forty years to be served concurrently with a separate 100-year federal sentence. Now, Petitioner appeals the denial of his petition for post-conviction relief, arguing the post-conviction court erred in finding that he received effective assistance of counsel due to trial counsel's failure to retain a mental health expert, failure to request a change of venue, failure to properly investigate potential witnesses, and failure to adequately explain concurrent state and federal sentencing. The State concedes that Petitioner received ineffective assistance of counsel based on the sentencing issue alone. Following our review of the record and submissions of the parties, the majority concludes that Petitioner received ineffective assistance of counsel. Accordingly, we reverse the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., joined. J. ROSS DYER, J., concurred in results only.

Jessica Sisk, Newport, Tennessee, for the appellant, Tyler James Schaeffer.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Jimmy B. Dunn, District Attorney General; and Brad Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual and Procedural History*

On September 16, 2012, Petitioner drove his vehicle on Highway 441 in Sevier County, Tennessee. While texting about an impending drug deal, Petitioner crossed the centerline of the highway and collided head-on with a church van. The violent crash killed two passengers and injured eleven others. At the time of the collision, Petitioner possessed a controlled substance, and his blood test results showed that Petitioner had methylone, methamphetamine, and marijuana metabolite in his bloodstream while he was driving. A Sevier County Grand Jury indicted Petitioner with two counts of vehicular homicide by intoxication; two counts of reckless vehicular homicide; eleven counts of reckless aggravated assault with a deadly weapon; nine counts of reckless aggravated assault resulting in serious bodily injury; nine counts of vehicular assault; one count of driving under the influence; one count of production, manufacture, distribution, or possession of a controlled substance analogue; and one count of possession of synthetic derivatives or analogues of methcathinone.

In March of 2013, a federal grand jury indicted Petitioner with fourteen counts arising from a string of robberies committed between July 26, 2010, and September 14, 2012. *United States v. Schaeffer*, 626 F. App'x 604, 605 (6th Cir. 2015). Petitioner pled guilty to all counts except for four counts of using a firearm in a crime of violence and one count of using a firearm in furtherance of a drug trafficking crime. *Id.* at 606. One of the firearms charges was dropped, and Petitioner was found guilty by a jury of the remaining counts. *Id.* On March 3, 2014, Petitioner received a 100-year sentence for his federal convictions.

On September 2, 2014, Petitioner entered a negotiated plea agreement in Sevier County Circuit Court. Petitioner pled guilty to two counts of vehicular homicide, two counts of aggravated assault, nine counts of vehicular assault, and one count of controlled substance analogue.[1] In exchange for his guilty plea, Petitioner received an effective sentence of 40 years to be served concurrently with a separate 100-year federal sentence. Petitioner did not file a subsequent direct appeal.

---

[1] The negotiated plea agreement also included one count of aggravated burglary in case number 18041. However, Petitioner did not challenge that plea in any of his post-conviction filings and there is no judgment form in the record before this Court. Therefore, any challenge with regard to the aggravated burglary conviction is waived.

A year after entering his guilty plea, Petitioner filed a timely pro se petition for post-conviction relief, asserting that he involuntarily entered into the plea agreement without understanding the nature and consequence of the plea and that he received ineffective assistance of counsel due to counsel's failure to procure a mental health expert, failure to request a change of venue, failure to properly investigate the case, and failure to adequately advise him regarding concurrent state and federal sentencing. The post-conviction court subsequently appointed counsel to represent Petitioner, and Petitioner filed an amended petition. His amended petition only asserts the denial of effective assistance of counsel.

At the post-conviction hearing, trial counsel testified that he has been the District Public Defender for the Fourth Judicial District since 1989 and that he was appointed to represent Petitioner. The testimony of both Petitioner and trial counsel indicated that prior to Petitioner's entry of the guilty plea, trial counsel met with him multiple times over the course of two months. According to trial counsel's testimony, Petitioner and trial counsel discussed possible defenses, sentencing exposure, the status of this case relative to his federal case, and accident reconstruction. Trial counsel maintained that he went over the discovery with Petitioner, but Petitioner claimed that while he saw copies of his discovery, trial counsel did not review it with him. According to Petitioner, trial counsel "was trying to coerce me into [pleading]" during these meetings, and "he wasn't interested in the facts or anything." When asked to expound, Petitioner stated, "Because every time he talked to me, he talked to me with a plea offer[.]"

Petitioner recounted that, during his meetings with trial counsel, Petitioner told trial counsel about speaking with his mother about five minutes prior to the collision and stopping at a friend's house not long before the collision. Petitioner did not know whether trial counsel ever spoke with the potential witnesses. Trial counsel could not remember whether Petitioner mentioned potential witnesses to him, but he stated that it is possible Petitioner mentioned somebody he had been partying with the night before the collision. Petitioner admitted that he did not speak with trial counsel regarding undergoing a mental evaluation despite suffering what Petitioner described as a "pretty severe brain injury." Trial counsel did not remember Petitioner ever asking for a mental evaluation, and based on his interactions with Petitioner, he did not see an obvious need for one.

As a part of his investigation, trial counsel retained an accident reconstruction expert who opined this was an obvious case of fault because the two vehicles hit almost head-on traveling at a rate of sixty miles an hour. According to trial counsel, had the case proceeded to trial, the accident reconstruction expert would not have been called as an expert.

Petitioner testified that the collision involving Petitioner received a lot of media attention, and he frequently saw the story on the news while incarcerated. He claims that when he expressed concerns about this to trial counsel, trial counsel informed Petitioner that he would look into requesting a change of venue. Trial counsel admitted that he discussed pursuing a change of venue, but he did not file a motion because venue is never decided until jury selection. According to Petitioner, he primarily entered into the plea agreement because he believed that his state and federal sentences would run concurrently, but his fear that he would not receive a fair trial in Sevier County also played a role in his decision to plead guilty.

Trial counsel admitted that he did not discuss the details of Petitioner's federal case with him "to a great extent." Trial counsel said that he spoke with Petitioner's attorney in the federal case and knew what Petitioner's defense was in federal court. Trial counsel further asserted that when speaking with Petitioner, he "discussed that should he go to trial and be convicted, the Court could run his sentence consecutively to his federal sentence[.]" However, according to Petitioner, he specifically asked trial counsel if his state sentence was going to run concurrently with his federal sentence according to his plea agreement, and trial counsel responded, "[Y]es, it's going to run concurrent with [your] federal sentence." Trial counsel disclosed that because the state proceedings occurred later in time, he thought that the parties could agree to run the sentences concurrently. Further, trial counsel stated that he went over the plea forms with Petitioner, which indicated that the state sentence was to run concurrently with Petitioner's federal sentence.

At the post-conviction hearing, Petitioner blatantly proclaimed, "[Trial counsel] told me several times that my state sentence was going to run concurrent with my federal sentence, and in the plea agreement it said in bold print at the bottom to run concurrent with federal sentence. If it wasn't running concurrent I was insisting on going to trial in the case." The plea agreement signed by Petitioner, trial counsel, and the District Attorney General was entered into evidence and conspicuously states in all capitals and bold font, "**ALL OF THE ABOVE TO RUN CONCURRENTLY WITH FEDERAL SENTENCE**." Petitioner reiterated that he would not have accepted the plea agreement if his state and federal sentences had not been concurrent. The following exchange took place between Petitioner and his post-conviction attorney:

Q.      What did you understand the terms of your state sentence were in relation to your federal sentence?

- 4 -

A. To run at the same time, to run concurrent with my federal sentence. That was my main reason for taking the plea, ma'am.

. . . .

Q. How, who advised you regarding the concurrent versus consecutive sentencing?

A. [Trial counsel] and the paper that I signed, the plea agreement that I had signed, ma'am.

Q. Are you saying here today that if it were running consecutive that you would not have pled?

A. No, ma'am. I would have took it to trial, ma'am.

The trial court subsequently asked for clarification regarding whether the state sentence was running concurrent with the federal sentence, resulting in this exchange with the attorneys:

THE COURT: Well, now hold on a minute. His sentence here, is it running concurrent with the federal sentence?

[THE STATE]: My information shows that it is, Your Honor.

[DEFENSE COUNSEL]: No.

THE COURT: What?

[THE STATE]: The TOMIS shows that it's been running since 2010, the state sentence has been running since 2010, is the information that I have.

[DEFENSE COUNSEL]: Per the state judgments, Your Honor, it's running concurrent.

THE COURT: Then what more could we have done?

. . . .

- 5 -

[DEFENSE COUNSEL]: Per the federal, they are not granting that credit, so that's where we're at. The state judgments and everything reflected it. However, the federal is not giving that credit to [Petitioner].

[THE COURT:] Is that right, General?

[THE STATE]: That's my understanding.

After both parties concluded proof, the post-conviction court denied the petition for post-conviction relief and, in its final order of dismissal, found that Petitioner received effective assistance of counsel. The post-conviction court stated that Petitioner was not entitled to relief on the grounds of trial counsel's inadequate advisement regarding concurrent sentencing of the state and federal sentences, failure to procure a mental health expert, failure to request a change of venue, or failure to properly investigate the case. With regard to the plea agreement, the post-conviction court noted that the trial court had "no authority to require the federal system to run their sentence concurrent to the state sentence." With regard to the need for a mental health evaluation, the post-conviction court found that "no evidence was offered by [Petitioner] that indicates any mental defect at all" and concluded that "absent some medical proof or very significant lay proof, there is no basis for the Court to rule [trial counsel] should have sought a mental evaluation for [Petitioner]." The post-conviction court further stated, "[Petitioner] completely understood each and every element of the plea agreement and affirmed it with the Court. [Petitioner's] sentence [was imposed] precisely according to his plea agreement. . . . [Petitioner] has buyer's remorse. He received exactly what he bargained for in this system."

Petitioner's timely appeal followed.

*Analysis*

On appeal, Petitioner asserts trial counsel provided ineffective assistance due to trial counsel's failure to retain a mental health expert, failure to request a change of venue, failure to properly investigate the case by speaking to potential witnesses identified by Petitioner, and failure to explain the possibility that Petitioner's state and federal sentences would not run concurrently. The State concedes that Petitioner was provided ineffective assistance of counsel based upon trial counsel's failure to explain the concurrent sentencing. Following our review of the record and submissions of the parties, we agree with both parties and conclude that Petitioner received ineffective assistance of counsel because trial

counsel did not adequately advise Petitioner about concurrent state and federal sentencing.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *Burns*, 6 S.W.3d at 461. This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley*, 960 S.W.2d at 578). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Id.* at 456. Questions concerning witness credibility, the weight and value to be given to testimony, and

the factual issues raised by the evidence are to be resolved by the post-conviction court. *Id.* However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Id.* at 458.

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the Strickland test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). Because Petitioner's ineffective assistance of counsel claims relate to his guilty plea, in order to show prejudice he "must prove that counsel performed deficiently and 'there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.'" *Grindstaff v. State*, 297 S.W.3d 208, 217 (Tenn. 2009) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "[A]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Hill*, 474 U.S. at 58. (quoting *Strickland*, 466 U.S. at 691).

## I.       *Failure to Retain Expert Witness*

First, Petitioner asserts that trial counsel was ineffective because he did not procure the services of a mental health expert to aid in the defense of the case in

light of Petitioner's claim that he sustained a head injury in the car crash resulting in his arrest on these charges. Neither the post-conviction court nor this Court can speculate "as to what the [expert] evidence would have shown and . . . how it would have benefitted Petitioner." *Brimmer v. State*, 29 S.W.3d 497, 512 (Tenn. Crim. App. 1998) (internal citations omitted). Claims of ineffective assistance of counsel based on a failure to present evidence, therefore, require proof of what that evidence would have been and how it would have aided in the defense. *Id.* In the absence of such evidence, post-conviction relief is not warranted. *William Darryn Busby v. State*, No. M2012-00709-CCA-R3-PC, 2013 WL 5873276, at *14 (Tenn. Crim. App. Oct. 30, 2013).

Here, the record is void of evidence as to why Petitioner required a mental health expert, what such an expert would have said, and how it would have aided in Petitioner's defense. Instead, Petitioner testified that he never asked trial counsel to hire a mental health expert but offered this explanation for why one should have been retained anyway: "I had suffered a pretty severe brain injury and I was going through some things mentally, and I mean, that very well should have and could have happened, a mental evaluation." The post-conviction court found "no evidence was offered by [Petitioner] that indicates any mental defect at all," and the evidence does not preponderate against this finding. The post-conviction court went on to conclude that "absent some medical proof or very significant lay proof, there is no basis for the [c]ourt to rule [trial counsel] should have sought a mental evaluation for [Petitioner]." We agree with this reasoning. Without proof as to what the mental health expert would have said and how the expert would have aided in Petitioner's defense, the evidence presented at the post-conviction hearing was inadequate to support Petitioner's claim.

## II.     *Failure to Request Change of Venue*

Next, Petitioner asserts trial counsel was ineffective for failing to request a change of venue. A change of venue can be granted upon a showing of undue excitement or any other cause that is likely to result in an unfair trial. *See* Tenn. R. Crim. P. 21. Absent a showing of prejudice, however, the failure to seek a change of venue alone will not establish ineffective assistance of counsel. *Adkins v. State*, 911 S.W.2d 334, 337 (Tenn. Crim. App. 1994). Likewise, "allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." *Taylor v. State*, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991).

In the present matter, Petitioner testified his case received a lot of media coverage. Because of that, he did not think he would receive a fair trial in Sevier County and asked trial counsel to seek a change in venue. Petitioner further

testified the high profile nature of his case is ultimately one reason he accepted the State's plea offer. Trial counsel testified he and Petitioner discussed the possibility of requesting a change of venue, but he was waiting until closer to trial to file a motion because the trial court typically does not address venue until jury selection.

The decision of trial counsel to wait until closer to trial to request a change of venue was a tactical decision, and Petitioner cannot attack "a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins*, 911 S.W.2d at 347 (citing *State v. Martin*, 627 S.W.2d 139, 142 (Tenn. Crim. App. 1981)). Moreover, Petitioner has not shown he was prejudiced by trial counsel's failure to request a change of venue because he has failed to show that, but for counsel's failure to request a change of venue, Petitioner would not have pled guilty.

### III. *Failure to Investigate Potential Witnesses*

Additionally, Petitioner contends trial counsel was ineffective because he failed to speak with the witnesses named by Petitioner. When a petitioner contends trial counsel failed to discover, interview, or present witnesses in support of his defense, Petitioner must call those witnesses to testify at an evidentiary hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). This is the only way Petitioner can establish that:

> (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of Petitioner.

*Id.* Even if a petitioner is able to show counsel was deficient in the investigation of the facts or the calling of a known witness, Petitioner is not entitled to post-conviction relief unless he produces a material witness at his post-conviction evidentiary hearing who "could have been found by a reasonable investigation" and "would have testified favorably in support of his defense if called." *Id.* at 758. Without doing this, Petitioner cannot establish the prejudice requirement of the two-prong *Strickland* test. *Id.*

Here, Petitioner contends that as part of his investigation trial counsel should have spoken to a witness at the party he attended the night before the lethal

- 10 -

automobile accident and to his mother, with whom Petitioner spoke via cell phone shortly before the accident. Petitioner failed to call either of these witnesses at the post-conviction hearing. Thus, Petitioner has not shown he was prejudiced by trial counsel's alleged failure to speak with his mother and friend as part of his investigation, and we will not speculate as to what those witnesses would have said if called to testify at trial. *See Black*, 794 S.W.2d at 757.

### IV. Concurrent Federal and State Sentences

Finally, Petitioner argues that trial counsel was ineffective because he failed to adequately advise Petitioner about the implications of state court judgments specifying that state and federal sentences are to run concurrently. Petitioner was told by trial counsel that Petitioner's state sentence would run concurrently with his federal sentence. The plea agreement states that the state and federal sentences are to run concurrently, and each individual judgment form states that the state and federal sentences are to run concurrently. It is abundantly clear that Petitioner, trial counsel, the District Attorney General, and the trial court had the intent to run Petitioner's state sentence concurrently with his federal sentence. However, neither trial counsel, the District Attorney, nor the trial court possessed the power to impose concurrent sentencing on the federal government. *See United States v. Means*, No. 97-5316, 1997 WL 584259, at *2 (6th Cir. Sept. 19, 1997). When trial counsel assured Petitioner that his sentences would be concurrent, he made an empty promise, and Petitioner did not get what he bargained for. Petitioner's plight is that he could end up serving a consecutive sentence because there is no way to ensure that he will not be taken into federal custody and required to serve his entire federal sentence upon the completion of his state sentence.

This Court has found deficient performance when previously presented with "virtually identical" circumstances. *Joseph T. Faulkner v. State*, No. W1999-00223-CCA-R3-PC, 2000 WL 1671470 at *2 (Tenn. Crim. App. Oct. 17, 2000) (citing *Derrick E. Means v. State*, No. 02C01-9707-CR-00248, 1998 WL 470447 (Tenn. Crim. App. Aug. 13, 1998), *no perm. app. filed*), *no perm. app. filed*. As in the present case, Faulkner entered a guilty plea pursuant to a negotiated plea agreement which provided that his state sentences were to be served concurrently with his federal sentences. *Id.* at *1. Though Faulkner's judgments stated that his sentence was to be served in federal custody, the federal government refused to accept Faulkner into federal custody. *Id.* So, like Petitioner, Faulkner was serving his sentence in state custody. *Id.* Faulkner argued that his trial counsel was ineffective for providing erroneous advice, and this Court found his trial counsel to be ineffective. *Id.* at *1, *4. Relying on *Derrick E. Means* and federal precedent, this Court explicitly stated, "Where a guilty plea is brought about by a promise that is legally impossible to fulfill, not only has the prosecution failed in

its duty, but defense counsel has rendered incompetent advice by failing to investigate and determine whether the terms of the plea agreement could be satisfied before recommending the plea to his or her client." *Id.* at *4 (generally citing *Hill v. Lockhart*, 474 U.S. 52 (1985), and *Derrick E. Means*, 1998 WL 470447).

If trial counsel had carried out his duty to investigate the terms of the plea agreement, he would have realized that a state court provision requiring federal and state sentences to run concurrently is not worth the paper on which it is written. *See Taylor v. Sawyer*, 284 F.3d 1143, 1150 (9th Cir. 2002) (adopting the reasoning of Judge Norris's concurrence in *Del Guzzi v. United States*, 980 F.2d 1269, 1272-73 (9th Cir. 1992), that "concurrent sentences imposed by state judges are nothing more than recommendations to federal officials"). Additionally, this Court has held on multiple occasions that a guilty plea induced by the unfulfillable promise of concurrent state and federal sentences will not stand.[2] *See Bernard Frazier v. State*, No.W2013-00187-CCA-R3-PC, 2014 WL 1410285 at *8 (Tenn. Crim. App. Apr. 10, 2014) (holding that the pleas were not knowingly and voluntarily entered but finding counsel to be effective), *no perm. app. filed*; *State v. Virgil*, 256 S.W.3d 235, 241-42 (Tenn. Crim. App. 2008) (holding that the pleas were not knowingly, voluntarily, and understandingly entered); *Joseph T. Faulkner*, 2000 WL 1671470 at *3 (holding that the pleas were not knowingly and voluntarily entered and that defense counsel was ineffective); *Derrick E. Means*, 1998 WL 470447 at *3-*6 (holding that the pleas were not knowingly entered and that defense counsel was ineffective). Alas, there is no indication in the record that trial counsel even attempted to investigate and determine if the conditions of the plea could be legally satisfied before recommending the plea to Petitioner. Accordingly, trial counsel's actions fell below an objective standard of reasonableness according to the prevailing professional norm, and we find that trial counsel's performance was deficient.

The facts of this case are distinguishable from those in *Bernard Frazier* where this Court found that trial counsel's performance was not deficient. 2014 WL 1410285 at *6. In *Bernard Frazier*, defense counsel had "'numerous conversations' with federal counsel so he 'would be more aware of how sentencing would work with the Feds and here and State Court[.]'" *Id.* at *4. However, defense counsel specifically told Frazier "that there was no guarantee that the time would be run concurrent" and "that how and where he would be

---

[2] We think that it is prudent to note that Petitioner did not challenge his pleas on the grounds of knowledge or voluntariness. As such, the majority refrains from addressing that issue because this Court may not address an issue for post-conviction relief sua sponte when that issue has been waived. *Grindstaff*, 297 S.W.3d at 219 (citing *State v. West*, 19 S.W.3d 753, 756-57 (Tenn. 2000)).

housed was entirely up to the federal authorities." *Id.* Here, the facts do not indicate that trial counsel had numerous conversations or that trial counsel had coordinated extensively with federal counsel. Trial counsel merely testified that he "talked to [Petitioner's] lawyer" on the federal case. Further, there is no indication that trial counsel advised Petitioner that there was a possibility that his sentences would not be concurrent. It is trial counsel's lack of coordination and failure to warn his client of the possibility that his sentences would not be concurrent that lead us to a different conclusion regarding the effectiveness of counsel in this case.

The importance of the condition that the state and federal sentences were to run concurrently is readily gleaned from the fact that the operative words were written in all capitals and bold font on the plea agreement. Petitioner stated at the post-conviction hearing that he would have insisted on going to trial if the sentences were not concurrent. Further, Petitioner stated that the concurrent sentencing was his "main reason" for taking the plea agreement. It is clear that trial counsel's actions directly induced Petitioner's plea. Based upon these facts, we conclude that Petitioner was prejudiced in that there is a reasonable probability that Petitioner would not have pleaded guilty if trial counsel had not errantly told him that his sentences would run concurrently. We hold that the evidence preponderates against the trial court's findings and that Petitioner received ineffective assistance of counsel.

This Court has previously outlined the relief available to a petitioner who has received ineffective assistance of counsel and entered into this type of empty plea agreement:

> Fashioning relief for the petitioner will take the combined good faith efforts of all involved. The parties are first encouraged to make every effort to fulfill the intent of the plea bargain. Specific performance may, however, be impossible to effectuate. Both defense counsel and the district attorney's office, while taking steps to preserve the integrity of the state sentence, should contact federal authorities and determine whether the federal authorities would be willing to accept the petitioner for his federal sentence.

> If specific performance is an impossibility, the parties should enter into new plea negotiations taking into account the intentions of the failed plea agreement. The agreement failed through no fault of the petitioner. In our view, plea negotiations and sentencing should take into account the time the petitioner has served in prison and in the county jail. If these avenues do not provide a satisfactory

- 13 -

> resolution, the petitioner may be allowed to withdraw his guilty pleas altogether and face trial.

*Joseph T. Faulkner*, 2000 WL 1671470 at *4 (quoting *Derrick E. Means*, 1998 WL 470447 at *7).

While not impossible, concurrent state and federal sentencing is tricky or even illusory absent the proper scenario. *See Faulkner v. State*, 226 S.W.3d 358, 363-64 (Tenn. 2007) (quoting Erin E. Goffette, Note, *Sovereignty in Sentencing: Concurrent and Consecutive Sentencing of a Defendant Subject to Simultaneous State and Federal Jurisdiciton*, 37 Val. U.L. Rev. 1035, 1057-58 (2003) (explaining that the two ways to make a state sentence concurrent to a federal sentence involve a decision by the Federal Bureau of Prisons)). Judge Norris's concurrence in *Del Guzzi* offers the following warning to those who attempt this feat:

> State sentencing judges and defense attorneys in state proceedings should be put on notice. Federal prison officials are under no obligation to, and may well refuse to, follow a recommendation of state sentencing judges that a prisoner be transported to a federal facility. Moreover, concurrent sentences imposed by state judges are nothing more than recommendations to federal officials. Those officials remain free to turn those concurrent sentences into consecutive sentences by refusing to accept the state prisoner until the completion of the state sentence and refusing to credit the time the prisoner spent in state custody.

*Del Guzzi*, 980 F.2d at 1272-73 (Norris, J., concurring); see also *State ex rel. Massey v. Hun*, 478 S.E.2d 579, 582 (W. Va. 1996). Likewise, we issue the following warning: without some sort of written agreement from the federal government, District Attorney Generals should not make plea offers which guarantee concurrent state and federal sentencing; defense attorneys should not agree to plea offers which guarantee concurrent state and federal sentencing; and trial court judges should not accept plea agreements which guarantee concurrent state and federal sentencing.

*Conclusion*

For the aforementioned reasons, we reverse the judgment of the post-conviction court and remand this case for proceedings consistent with the avenues of relief proposed by this Court in *Joseph T. Faulkner* and *Derrick E. Means*.

_____
TIMOTHY L. EASTER, JUDGE